EDWARD R. HOLDEN, Appellant, *v.* JAMES C. DAVIS, Director-General of Railroads, as Agent (PULLMAN COMPANY), Respondent.

Supreme Court, Appellate Term, First Department, October Term — Filed November, 1922.

**Carriers — loss of baggage while traveling in Pullman car — when nonsuit improper.**

Upon an appeal from a judgment of nonsuit granted at the close of plaintiff's case, his version of the facts must be accepted as true.

Where the evidence in an action brought by a Pullman car passenger to recover for the loss of his overcoat and traveling bag which he had deposited in his berth, makes out a *prima facie* case, the question of fact whether the defendant exercised the vigilance required of it in the circumstances should go to the jury, and a judgment entered upon a dismissal of the complaint at the close of plaintiff's case will be reversed, and a new trial ordered.

APPEAL by plaintiff from a judgment of the Municipal Court of the city of New York, borough of Manhattan, eighth district, in favor of defendant, entered on a dismissal of the complaint at the close of plaintiff's case, after trial before a jury.

*Charles A. Winter,* for appellant.

*Alexander & Green (H. S. Ogden,* of counsel), for respondent.

MULLAN, J. As the plaintiff was nonsuited at the close of his case, his version must be accepted, upon this appeal, as an admittedly

correct statement of the facts.  The facts, accordingly, are as follows:   On February 2, 1920, the plaintiff, being at Wichita Falls, Tex., and desiring to go to Oklahoma City, Okla., purchased railway and Pullman sleeping accommodations for the journey.   The train was scheduled to leave Wichita Falls, its starting point, at seven-twenty P. M.   At half past six o'clock that evening plaintiff endeavored to board the train, which was then made up and lying in the station.   The sleeping car to which plaintiff's Pullman ticket assigned him was the last car of the train.   Plaintiff endeavored to open the front door; it was locked.   He stood about the platform " for some time," with other passengers waiting to be admitted to sleepers.   At about seven o'clock the front door of the plaintiff's sleeper was opened by the Pullman conductor, who admitted plaintiff to the car after taking that part of the Pullman ticket that the company customarily retains.   There was no porter in sight, and plaintiff looked around the car, found his berth, which was already made up (apparently all the berths were made up), and deposited there his overcoat and traveling bag.   Plaintiff then smoked a cigarette, for part of the time in the smoking compartment of his car, and for the rest upon the station platform.   He fixes ten minutes as the time consumed in his smoking.  He then looked for the Pullman conductor, to ask him some question about his ticket.   It does not appear, and it is perhaps immaterial, whether or not plaintiff then found the conductor, but in any event plaintiff again went to his berth, when he found that his overcoat and bag had disappeared.   The train was still lying at the station.   The rear door of the last car was, at the time of plaintiff's discovery of his loss, open. Immediately upon the discovery of his loss, plaintiff went through the car, and one or more forward cars, in search of the Pullman conductor, whom he found, and to whom he told of his loss.   The conductor sent for the " yard detectives," asked where the porter was, and went back with plaintiff to plaintiff's berth.   Then, for the first time, plaintiff saw the porter assigned to his car.   The bag and coat were not found, and this action was brought for the recovery of their value, the Pullman Company being represented, as defendant, by the government's agent.

We are of the opinion that the plaintiff made out a *prima facie* case, and thus should have been permitted to go to the jury.   In view of the quite comprehensive treatment by Judge Pound, in *Goldstein* v. *Pullman Co.*, 220 N. Y. 549, 555, of the legal relation of a sleeping car company to a passenger in one of its sleeping cars, we think we are not called upon to state our reasons at any great length.   The very fact that the berths were made up at such an

hour, when normal people do not retire, required of the company an adequate corps of servants, and adequate vigilance on the part of such servants, to prevent the very sort of thing that occurred here. What was the plaintiff expected to do? Retire at such an hour? He could not use the made-up berth as a sitting place. He did what any other man would have done in the circumstances, and it will be for the company to show that it exercised a vigilance adequate to the occasion. As Judge Pound has said, in the *Goldstein* case, the company's " duty at night when the passengers are at rest is one of vigilance so that the passenger may not lose his property through its inattention. When that duty is faithfully discharged, baggage does not as a rule disappear." In that case it was held error to nonsuit a passenger who retired, to his berth, at eleven o'clock leaving his bag, which was lost, in the aisle. We think the instant case is at least as strong for the passenger as was the *Goldstein* case, and that in any event the reasoning of the court in the *Goldstein* case made it properly a question of fact here whether the Pullman Company exercised the vigilance required of it in the circumstances.

Judgment reversed and new trial ordered, with thirty dollars costs to appellant to abide the event.

Guy and Bijur, JJ., concur.

Judgment reversed.